IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARLON DESHONE QUARLES,

Plaintiff,

v.

KYLE THOLE, LUKE BRANDMEYER,
DOUG MAUE, and
HUGHES LOCHARD,

Defendants.

Case No. 20-cv-697-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Marlon Deshone Quarles, an inmate in the custody of the Federal Bureau of Prisons ("BOP") who is currently confined at USP Coleman, brought this action pursuant to 42 U.S.C. § 1983 and the Rehabilitation Act, 29 U.S.C. § 794, for claims which occurred while he was a pretrial detainee at the Clinton County Jail. This matter is currently before the Court on a motion for summary judgment filed by Defendants Kyle Thole, Luke Brandmeyer, and Doug Maue (Doc. 73). Defendant Lochard was granted leave to join in the motion (Doc. 75).

In a nutshell, Defendants argue that Quarles failed to exhaust his administrative remedies while at the Clinton County Jail. Specifically, they argue he failed to exhaust his claims in Counts 1, 2, 6, and 8. Quarles filed a response in opposition to the motion (Doc. 80). On January 19, 2023, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). After the hearing, the parties submitted

closing briefs (Docs. 90, 91).

BACKGROUND

On July 16, 2020, Quarles filed his initial Complaint for constitutional violations which allegedly occurred while he was detained at the Clinton County Jail (Doc. 1). He was allowed to proceed on a number of his proposed claims (Doc. 14). The Court later assigned counsel for Quarles, and counsel sought leave to file an Amended Complaint (Doc. 45). Quarles was allowed to file an Amended Complaint (Docs. 54 and 55) and later sought leave to file a Second Amended Complaint which added official capacity claims (Docs. 60, 68, 69). Quarles was ultimately allowed to proceed on the following counts:

Count 1:     Eighth and Fourteenth Amendment claim against Maue, Brandmeyer, and Thole (individual and official capacities) for unconstitutional conditions of confinement.

Count 2:     Eighth and Fourteenth Amendment claim against Thole, Brandmeyer, and Lochard for the denial of adequate medical care after his February 5, 2020 surgery.

Count 5:     First Amendment religious freedom claim against Maue, Brandmeyer, and Thole (individual and official capacities) for denying Quarles a kosher diet.

Count 6:     Rehabilitation Act, 29 U.S.C. §794, claim against Maue (official capacity only) for denying Quarles access to a handicap accessible toilet on or around October 13, 2019, and October 20, 2019.

Count 7:     Fourteenth Amendment due process claim against Brandmeyer and Thole for placing Quarles in punitive segregation for 14 days beginning on June 10, 2020, without an order of detention or a hearing.

Count 8:     First Amendment retaliation claim against Maue, Brandmeyer, and Thole for retaliating against Quarles for filing grievances by denying him pain medication and placing

him in punitive segregation.

(Doc. 54, pp. 7-8; Doc. 69).

Defendants seek summary judgment as to Counts 1, 2, 6, and 8. Quarles concedes that he did not exhaust his claims as to Count 6 but asserts that he properly exhausted his claims in Counts 1, 2, and 8.

## A. Count 1 (conditions of confinement)

Count 1 alleges that Quarles was subjected to unconstitutional conditions of confinement. Specifically, the Second Amended Complaint alleges that after submitting a grievance about his cell on December 4, 2019, he was placed in another cell with unconstitutional conditions (Doc. 69, p. 6). He was placed in an underground, overcrowded cell with constant illumination, poor ventilation, black mold, no direct sunlight, and no access to exercise (*Id*. at pp. 6-7).

The December 4, 2019 grievance indicated that he needed to be placed in a cell where he could move around and interact with people (Doc. 73-2, p. 8). On January 4, 2020, Quarles submitted a grievance regarding possible tampering with his mail (Doc. 73-2, p. 12). The grievance does not discuss any conditions of his cell (*Id*.). Quarles testified in an affidavit in support of his motion that after he received the grievance back from Brandmeyer, he added a cover page to the grievance and additional language at the bottom of the grievance indicating that grievances about his living conditions were missing and he wanted the grievances returned to him (Doc. 80-1, pp. 2-3). Quarles maintains that the grievance was returned to him without the cover page or any additional language from jail staff (*Id*. at p. 3). He again resubmitted the grievance, this

Page 3 of 18

time without a cover page and wrote "3rd Request" at the top of the grievance (Doc. 80-2, p. 4). The grievance, which is also attached to his original Complaint, includes the following added line: "My grievances for having no sunlight, no exercise, no fresh air, and being confined to the cell 24hrs a day are all missing! I want them addressed about the mold and all returned to me." (Doc. 1, p. 22). Quarles testified that the grievance was again returned to him without an additional response (Doc. 80-1, p. 3).

Quarles also testified in his affidavit that he submitted an additional grievance regarding the mold and his lack of access to exercise sometime in March or April 2020 (Doc. 80-1, p. 3). He testified that he never received a response to the grievance, nor did he receive a copy of the grievance (Doc. 80-3, p. 3; 80-1, p. 3).

On May 1, 2020, Quarles submitted a grievance regarding his need for cleaning supplies (Doc. 80-2, p. 5). The grievance indicated that on April 30, 2020, he asked for a pair of disposable gloves to clean up after a bout of incontinence, but no one responded to his request, and he was forced to clean the area with his wash cloth (*Id.*). His grievance complained of the lack of gloves and cleaning supplies, indicating they were not provided due to orders from Brandmeyer. Thole responded to the grievance indicating that cleaning supplies were given every day but that extra cleaning supplies are not provided for security reasons (*Id.*).

Quarles also states that on June 26, 2020, he requested a grievance form to complain about mold in his cell but that he was transferred before he received any forms (Doc. 80-3, p. 3).

### B. Count 2 (Medical Care)

Count 2 alleges that Thole and Brandmeyer refused to provide Quarles with pain medication or cream after his surgery on February 5, 2020. Quarles argues that he made oral complaints about the lack of his medications. On February 7, 2020, he submitted a grievance regarding his lack of medication (Doc. 73-2, p. 23). The grievance alleged that Dr. Lochard denied him narcotic mediation which had been ordered by his surgeon (*Id.*). Quarles stated in the grievance that Dr. Lochard did not have the authority to override the surgeon's decision regarding medication. He requested his medication, information about the company who employed Dr. Lochard, and information regarding the length of the prescription (*Id.*). The response to the grievance indicated that Dr. Lochard was in charge of Quarles's healthcare and could override medical decisions made by outside providers (*Id.*). Quarles was also informed that the denial of the prescription went through Dr. Lochard's employer, Advanced Correctional Healthcare (*Id.*).

Quarles acknowledges that his grievance did not mention Thole or Brandmeyer but argues that neither the handbook nor the grievance forms required him to identify the defendants in his grievance. Thus, he argues the February 7, 2020 grievance provided enough information to put the Jail on notice about his lack of access to pain medication and cream. He also argues that he made oral requests for pain medication to staff, including Thole and Brandmeyer (Doc. 80-3, p. 2).

### C. Count 8 (Retaliation)

Count 8 of Quarles's Second Amended Complaint alleges that Maue, Brandmeyer, and Thole retaliated against Quarles for writing grievances by depriving him of pain

medication and sentencing him to segregation. Defendants argue that none of the grievances in Quarles's file include allegations regarding his retaliation claim. Quarles argues that he did not need to submit a grievance specifically stating that he was being retaliated against because he submitted grievances about being denied medication and the violation of his due process rights.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286

Page 6 of 18

F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## B. Clinton County Grievance Procedures

As a detainee at the Clinton County Jail, Quarles was required to follow the procedures set forth in the Inmate Handbook. The grievance procedures described in the

Inmate Handbook were in effect during the time Quarles was detained at the Clinton County Jail (Doc. 73-3, p. 1). The Handbook provides that inmates may file grievances on a number of issues including: "when subjected to a criminal act by another inmate, when subjected to a prohibited act by a staff member, in the case of abuse or harassment, violation of civil rights, or denied privileges without just cause." (Doc. 73-3, p. 3). Before filing a grievance, the inmate must first try to resolve an issue with the staff on duty (*Id.*). If the issue is not resolved, an inmate may obtain a grievance form "by request from the correctional deputy working the floor." (*Id.*). In order to have the issue addressed, the grievance form must be filed with the shift deputy (*Id.*). The grievance is then submitted to the shift supervisor (*Id.*). The grievance is then investigated, and appropriate action taken. The inmate will receive a copy of the grievance, and the original grievance is placed in the inmate's file (*Id.*).

The grievance form itself provides instructions for the contents of the grievance. The form states that an inmate must "provide the grievance information [on] the lines" and warns that the writing must be legible (*See* Doc. 73-3, p. 4).

## ANALYSIS

As noted above, Quarles concedes that he did not exhaust his administrative remedies as it relates to Count 6 (Doc. 80, p. 1). Defendants concede that Quarles exhausted his claims as to Counts 5 and 7. The parties dispute the exhaustion of claims in Counts 1, 2, and 8.

### A.   Count 1

As to Count 1, Quarles points to several grievances which he argues exhausted his

claims. Quarles first submitted a grievance on December 4, 2019, about conditions in A Unit (Doc. 73-2, p. 8). As a result of that grievance, he was moved to a cell in general population, an underground cell which Quarles testified was a six-man cell with table, toilet, and shower. It also lacked any room to exercise. Quarles argues that he did not have to file another grievance after his December 2019 grievance because the transfer did not resolve all of the issues he raised in the grievance. But it is clear from Quarles's testimony that his original cell in A Unit and the general population cell were different cells. The A Unit cell was a single cell and isolated from general population whereas the cell Quarles was moved to was underground and housed six inmates. It was in a different part of the jail and had different conditions from his original cell. Further, Quarles's claim focuses on the conditions in the underground cell and does not include his conditions in Unit A (Doc. 69, p. 6) ("In response to his grievance, Mr. Quarles was moved to the general population" cell which was underground and housed six to eight other men.). Thus, this was not a situation where Quarles was complaining about the same conditions. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2014) ("In order to exhaust their remedies, prisoners need not file multiple successive grievances raising the same issue."). Instead, Quarles was in a new cell, in a new area of the jail, with new conditions. As such, he had to file a new grievance and could not rely on his December 2019 grievance.

Quarles next points to a January 2020 grievance which he alleges that he submitted on three separate occasions. Quarles testified at the evidentiary hearing that he submitted this grievance, dated January 4, 2020, about mail related to previously submitted grievances. He testified that he sent grievances to the ACLU and several law professors

and never received a response or mail receipt. He believed that the grievances, which were to be sent in the mail, were missing and he wanted them returned. The grievance (Doc. 73-2, p. 12) did not include any complaints regarding his current conditions. Instead it complained about the mail being improperly held and sought its return (*Id.*). The grievance does not serve to exhaust the conditions of his cell because the grievance was not about his current conditions.

At the evidentiary hearing, Quarles testified that he sought to resubmit the grievance on two occasions. He realized he placed the wrong dates on the grievance and corrected those. He also added some additional language indicating the grievances that were missing included a grievance for having no sunlight, exercise, or fresh air (Doc. 1, p. 22). Quarles testified he placed a cover sheet on this grievance with a paper clip and placed it back in the door. He testified that he received the request without the cover slip back in his door the following morning. He also testified that he resubmitted the grievance as a third request (*Id.*). He claims that he did not receive a response to this grievance.

This grievance, even with the additional information, did not serve to exhaust his claims about the conditions of his cell. The altered grievances were still about his missing legal mail—which consisted of grievances that Quarles testified were sent to lawyers and the ACLU in November. In fact, the third request specifically states that those grievances are missing and requests that staff "please stop illegally going in my legal mail." (Doc. 1, p. 22). Nothing in the grievance, even if received, served to exhaust his claims about his conditions in the underground cell.

Page 10 of 18

Quarles next points to a grievance submitted in either March or April 2020 about mold and his lack of exercise in a new cell. The grievance is not in the Clinton County records, and Quarles could not recall the exact date that he submitted the grievance. He testified that he did not receive a response to the grievance. The Court does not find Quarles's testimony as to this grievance to be credible. There is no record that a grievance was submitted during this time period. Further, Kyle Thole, who managed the grievance process at Clinton County, testified that a copy is made when a grievance is received. When discussing the January 2020 grievances, he testified that he knew that the second and third requests were not submitted because a copy is made of a grievance when it is received and the original is kept in the jail's files. It was always their process to make a copy and put it in the prisoner's records.

In his closing brief, Quarles argues that Thole's testimony demonstrated that the jail improperly maintained grievances and that grievances were "disorganized." Further, he argues that the disorganization allowed for jail staff to remove grievances or lose them as they were only housed in a "closet." But the Court finds Thole's testimony as to the process of maintaining grievances credible. Thole testified that the sergeant on duty would bring a grievance response directly to the inmate; they would not be placed in the bars as Quarles testified. This undermines Quarles's testimony that he submitted grievances and either had them returned under the door or through the bars. It also undermines Quarles's testimony that he submitted grievances and received no response. Further, the Court does not find the Clinton County Jail's process for maintaining grievances by making copies and housing them in a central location to be "disorganized"

as Quarles argues. And there is no evidence that jail staff lost or removed grievances as Quarles suggests in his brief. Tholes testified that copies are made of the grievances and held in the grievance file folder until the end of the year, when they are given to the records custodian who files them. Although he did testify that the records were kept in a "closet," he indicated he had only been in the storage area a few times and had no idea how the records were maintained. There is no evidence to suggest it was disorganized. Thole's testimony suggested that if Quarles submitted a grievance, there would be a copy of it in the records. No such record of the grievance was found. Thus, the Court finds Quarles's testimony that he submitted a grievance in March or April to lack credibility.

Finally, Quarles did submit a grievance on May 1, 2020, and it was fully exhausted. This grievance indicated that he was denied a request for disposable gloves for having a bought of incontinence (Doc. 80-2, p. 5). He requested disposable gloves and was denied per instructions from Brandmeyer; his grievance requested gloves and cleaning supplies. The Court finds that this grievance was enough to exhaust the claims in Count 1 as it relates to the need for cleaning supplies in the jail.

Thus, the Court finds that Quarles exhausted his claims in Count 1 only as it relates to the lack of cleaning supplies. But there is simply no evidence to suggest that Quarles exhausted his remedies as to any of the other conditions that he alleges he faced at the jail. This includes allegations of being placed in an underground, overcrowded cell, and that he was subjected to constant illumination, poor ventilation, lack of access to exercise, or any other conditions. Further, the Court finds that whether or not he received information about the grievance process at Clinton County, he clearly knew how the

grievance process worked and utilized it on numerous occasions. In fact, Quarles testified that as an inmate in the federal system he knew the grievance process and how to access and fill out forms. Although Quarles argued in his closing brief that he could not file grievances on policies or was threatened with disciplinary consequences if grievances were proven untrue, there is simply no evidence in the record to support the contention that Quarles was dissuaded by these policies. There is simply no evidence to suggest that Quarles was personally threatened with discipline at any time, that he tried to submit grievances and had them rejected due to jail policies, or that he chose not to file grievances due to fear of punishment. Quarles also admitted that he submitted a number of grievances while at the jail. He did not, however, submit any grievances that would exhaust any of the other conditions in his Amended Complaint. Thus, Defendants are granted summary judgment on Quarles's claim in Count 1 for all of the conditions except for the lack of cleaning supplies. Count 1 will proceed against Defendants Maue, Brandmeyer, and Thole on this limited claim.

### B. Count 2

Defendants Thole and Brandmeyer argue that Quarles failed to exhaust his claims in Count 2 against them because he did not name them in his grievance. His grievance dated February 7, 2020, admittedly does not identify Thole and Brandmeyer as individuals who denied him access to pain medication after his February 2020 surgery. The grievance only identifies Dr. Lochard and indicates that Dr. Lochard denied his request for medication.

Thole and Brandmeyer argue that the grievance was insufficient to exhaust the

claims against them in Count 2. They argue that although Quarles filed a grievance about his access to pain medication on February 7, 2020, the grievance makes no mention of any actions, or lack thereof, that can be attributed to Thole and Brandmeyer. The grievance specifically mentions Dr. Lochard; nothing in the grievance suggests that other staff were denying him medication.

Quarles argues that he was not required to specifically identify Thole and Brandmeyer because the grievance procedures did not require that he identify the individuals. "When a prisoner uses a grievance form asking only for a 'Brief Summary of Grievance,'… then the omission of names or identifying information does not *necessarily* mean that the prisoner failed to exhaust his administrative remedies so long as he otherwise followed the grievance process." *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) (citing *Maddox v. Love*, 655 F.3d 709, 721-22 (7th Cir. 2011) (emphasis added)). Further, "all that the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought" and afford prison officials an opportunity to respond. *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *Pavey*, 663 F.3d at 905-06. An inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

But Quarles's grievance did not give officials a fair opportunity to address his complaints as to Thole and Brandmeyer. His grievance only voiced complaints about care he received from Dr. Lochard. Although Quarles testified that he was referring to all jail

staff—as well as the doctor—in his grievance, nothing in the grievance indicated that he

had also been denied care by jail staff, including Thole and Brandmeyer. In *Maddox*, the

Seventh Circuit found that an inmate's grievance provided fair notice when the inmate

complained of an administrative decision, a decision which officials would clearly be

aware of the staff responsible for the decision. *Maddox*, 655 F.3d at 722. Further, in *McRoy*

*v. Newton*, Case No. 18-cv-2163-NJR, 2021 WL 949404, at *6 (S.D. Ill. Mar. 12, 2021),—the

case cited by Quarles in support of his position that he did not need to provide any

identification for the jail officers—this Court found that grievances identifying issues

with the law library and mailroom were "enough to give notice to the right parties as his

grievances stated concerns regarding the mailroom and law library attendants."

Quarles's grievance, however, only complained about Dr. Lochard. He did not

complain about staff or suggest that he made requests for his medication to any other

official at the Clinton County jail (Doc. 73-2, p. 23).[1] Nor did he complain about his access

to a prescribed cream. The grievance only complained about Dr. Lochard's decision to

deny the pain medication. The grievance also asked for information about Dr. Lochard's

contract and the length of his prescription. Nothing in the grievance provided the jail

---

[1] Quarles argues that there were no administrative remedies available for complaining about the denial of post-operative medication, arguing that it was a policy claim and Clinton County's procedures prohibited grievances challenging the rules and policies themselves (Doc. 90-1, p. 2). His Amended Complaint does not suggest that Thole or Brandmeyer were liable because they created or implemented a policy regarding medical care at the jail. Instead, he alleges that they were aware of his surgery and need for pain medication yet refused to provide him with medication (*See* Doc. 69, pp. 9, 14). Even if the claim is construed as a policy claim, Quarles never testified that he was aware of that portion of the grievance policy. He also did not testify that he did not attempt to exhaust his remedies because he knew it would have been rejected based on Clinton County's policy. There is simply no evidence in the record to suggest the grievance process was unavailable as to his medical care claim.

with any notice that he was complaining about decisions of jail staff. Nor does the response indicate that the grievance officer was aware of complaints against other staff. The response only discussed Dr. Lochard, his authority, the company he worked for, and the length of the prescription. Thus, the Court finds that the grievance did not serve to exhaust his claims against Tholes and Brandmeyer in Count 2. Tholes and Brandmeyer are **GRANTED** summary judgment as to Count 2.

### C.  Count 8

The Court also finds that Quarles failed to exhaust his retaliation claim against Brandmeyer and Thole as it relates to his pain medication and his retaliation claim related to his due process claim. Count 8 alleges that Brandmeyer and Thole retaliated against Quarles for filing grievances by denying him pain medication (Count 2) and by placing him in segregation without notice or hearing (Count 7). Quarles argues that because he submitted grievances about his access to pain medication and the violation of his due process rights, he properly exhausted his retaliation claim on the same topics. Quarles argues that he did not have to articulate a legal theory or demand particular relief in his grievance, it was enough that he grieved the wrongful conduct.

But as the Court previously pointed out, Quarles's February 2020 grievance did not properly exhaust his claims against Brandmeyer and Thole because nothing in the grievance put the jail on notice of any wrongdoing by them. Thus, he similarly failed to exhaust his retaliation claim against Brandmeyer and Thole for the denial of his pain medication.

As to Quarles's due process claim, Defendants do not dispute that Quarles

Page 16 of 18

exhausted his due process claim against them (Doc. 73, p. 10). The grievance (Doc. 73-2, pp. 27-28) regarding the event at issue was exhausted. Defendants simply contend that no grievance was ever filed addressing the retaliation as it relates to the due process claim. But Quarles points to his grievance dated June 14, 2020. The grievance stated that officer Michael Arnold used excessive force against him through an unnecessary tactical maneuver (*Id.*). The grievance also stated that the actions of Arnold were "racially motivated, vindicative, unethical, and procedurally unprecedented" (*Id.* at p. 28). Quarles is not required to set forth a legal theory to explain why he believes he was denied his due process rights, and the grievance procedures do not require Quarles to state that the due process violations were done out of retaliation. *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). But the grievance does not reference either defendant. Instead, it focuses solely on the actions of Arnold. There is no mention of Thole, Brandmeyer, or Maue, nor is there *anything* in the grievance to indicate that those officers were present or involved in the actions of officer Arnold. Because nothing in the June 2020 grievance gives the jail notice that Quarles was complaining about the defendants, the Court finds that Thole, Brandmeyer, and Maue are entitled to summary judgment as to Count 8.

## CONCLUSION

For the reasons stated above, Defendants' summary judgment motion (Docs. 72, 73) is **GRANTED in part and DENIED in part**. Defendants Brandmeyer and Thole are entitled to summary judgment as to Count 2 and Count 8. Maue is **GRANTED** summary judgment as to Count 6 and Count 8. Maue, Brandmeyer, and Thole are **GRANTED** summary judgment as to Count 1 on all allegations except for the lack of cleaning

supplies. Thus, Count 1 shall proceed on only that limited claim. Counts 5 and 7 shall also proceed as Defendants conceded that they were exhausted. Count 2 shall proceed as to Lochard only.

**IT IS SO ORDERED.**

**DATED:   February 3, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**